The opinion of the Court was read as drawn up by
Parker C. J.
The legality of the service depends upon the question, whether the facts above stated constitute Dutch a party to the suit, within the meaning of St. 1783, c. 43, the first section of which enacts, “ that every coroner within the county for which he is appointed, shall serve all writs and precepts when the sheriff or either of his deputies shall be a party to the same ; and shall, if present in court, return jurors de talibus circumstantibus in all causes where the sheriff of the county shall be interested or related to either party.” The power of the coroner to serve writs and processes depends entirely upon this statute, so that a writ directed to and served by that officer would abate, unless the sheriff or his deputy were a party, they being interested to the contrary notwithstanding.[1]
It is plain then we are called upon to decide whether Daniel Dutch, who made the service of this writ, is a party to the suit; that he is interested in it admits of no question ; for we do not consider that his transfer of his shares to the bank, though absolute in form, devests his right and interest *427 in the shares, and we consider the question before us as wholly unaffected by that transfer. We are to ascertain the true meaning of the legislature in the use of the words of their statute, and we are to consider them, when legislating upon subjects relating to courts and legal process, as speaking technically, unless from the statute itself it appears that they made use of the terms in a more popular sense.
The word party then is unquestionably a technical- word, and has a precise meaning in legal parlance. By it is understood he or they by or against whom a suit is brought, whether at law or in equity ; the party plaintiff or defendant, whether composed of one or more individuals, and whether natural or legal persons ; they are parties in the writ, and parties on the record, and all others who may be affected by the writ indirectly or consequentially are persons interested, but not parties. And it is clear that the legislature used the word in this sense, for in one clause of the same section they require that the writ shall be served by a coroner where the sheriff or his deputy is a party, and in another they require another duty of the coroner where the sheriff shall be interested or related to either of the parties.
The interest of a sheriff or his deputy, or his relationship to one of the parties, however near, neither deprives him of the power, nor vests it in the coroner, of serving a writ. The legislature chose to trust to the fidelity and to the bonds of that highest ministerial officer, the sheriff, and to his control over his deputies, in all cases except where he or they should be personally and directly responsible in the suit as plaintiff or defendant. Whether this is wise or not, is not for us to say, but it has the wisdom of ages in its support; for so was the common law in the earliest times, and so were the colonial and provincial regulations of our country. By a recurrence to the year books, 8 H. 6. 12. pi. 30, and 9 H. 6. 10. pi. 30, it will be seen that it was debated among the acute spirits of that day, whether a process in which the sheriff was a party, might not be served by him either for or against himself. In the latter case cited it appears that a sheriff was plaintiff in an action of debt, and that he served the writ himself; and upon the copias, the defendant came and moved for judgment of the *428 writ. Paston, one of the judges, said, “ that is nothing to the purpose, for he may summon the party as well as the coroner, and he may as well serve the writ as another. To which the whole court conceded.”
It appears however from the case of Weston v. Coulson, 1 W. Bl. 506, that the law is now settled otherwise in England, the court having set aside the proceedings as irregular, because the sheriff, who was plaintiff in the suit, had himself served the latitat; but even now the process is directed to and served by the sheriff, unless he is strictly a party.
It does not appear that under our colonial system the office of coroner was known, or if such an officer existed, that he had in any sase the power of serving civil process. All writs were directed to and served by the marshals, who were like deputy sheriffs, being subservient to the marshal general, whose authority extended over the whole county, or by the constables of the several towns, no provision being made for the case of the marshal’s being a party ; probably the practice was, in such case, for the writ to be served by a constable, that officer not appearing to be limited as to the amount claimed in the writ which he might serve. See Colony Laws, c. 27, § 18, (Anc. Charters &c. p. 83.) By the Prov. St. 12 Will. 3, c. 6, it was provided “ that every coroner, within the county for which he is appointed, shall be, and hereby is empowered to serve and execute all writs and processes directed unto him against the sheriff or marshal of the same county, and to return jurors de talibus circumstantibus, where need shall be, to fill up the jury or juries, in all causes wherein the sheriff or marshal is concerned or related to either of the parties in any cause.” This statute left unprovided for the case of a sheriff’s being plaintiff in the action, so that probably, according to the old common law, he might serve writs in his own favor, there being no power vested in the coroner but to serve writs against him. This defect was remedied by Prov. St. 3. Geo. 1, c. 7, which enacts “ that when and so often as the sheriff or sheriffs of any of the counties within this province, their under-sheriffs or deputies, or any of them, are or may be concerned as plaintiff, complainant or defendant in any writ, action or process, that in such cases *429 the coioner of the same county shall he and hereby is em-t . , , powered to serve and execute the same, any law, usage or custom to the contrary notwithstanding. ” In this statute it will be observed, that instead of using the general term party, the legislature adopted words which amount to the definition above given of that term, and under this statute the question which is now presented never could have arisen, because an interest in the subject matter of the suit could not constitute a sheriff plaintiff, complainant or defendant. This statute remained in force until the statute of 1783 was passed, and we think it cannot be doubted that the legislature, in the use of the term party, did not intend to alter the law, but only to express more concisely and technically what was in a more detailed form enacted before. Now it would, we think, seem strange that there should have been any doubts about the construction of this statute. None but a sheriff or his deputy can serve any writ or process in which a sheriff or his deputy is not a party. This is an action in which the Merchants bank is plaintiff and James Cook is defendant; neither plaintiff nor defendant is sheriff or deputy sheriff; therefore none but a sheriff or deputy could serve the writ. But still it has been doubted ; and we have been told, and we believe truly, that the general practice has been, when a sheriff or his deputy has been a member of a corporation which is plaintiff or defendant, for the writ to be directed to and served by a coroner. And it has been shown that in the Precedents of Declarations there is a form of a writ against the proprietors of Haverhill bridge, in which it is alleged that the sheriff is one of the proprietors, and the writ is directed to a coroner. This declaration, it is supposed, was drawn by that distinguished lawyer, Parsons, who is an authority in himself; and it is said that the venerable compiler of American law, Dane, has, in his Abridgment, stated that this statute, giving authority to coroners, has been held to apply to cases where a sheriff or his deputy is a member of a corporation, suing or sued. All this is true, and if we were at liberty to adopt the opinions of others instead of our own, no greater weight of authority could be produced. But this is the first time a judicial construction of the statute has been called for in this *430 State, though it will be seen that in Maine, which emaiiE-ied from us, the question has arisen and been decided. We are bound to look for ourselves, and see whether the practice may not have been adopted from inadvertence, or from supposed analogy to cases which have no close affinity with that before us. As to the declaration, which in the book has the sanction of the name of Parsons, we know nothing except that it was compiled from the files in the clerk’s office of the county, and whether it was drawn by him or one of his clerks, or if by him, whether he maturely considered the question, we are ignorant. We know that suits by or against corporations were then very rare ; that suits against towns and other' municipal bodies had been frequent; and it is not surprising, that the construction which had been applied to suits for or against towns, of which sheriffs or their deputies were inhab tants, should be thought equally applicable to suits for or against other corporations. And yet there is a marked distinction between the two. Towns, parishes, precincts, &c., are but a collection of individuals with certain corporate powers for political and civil purposes, without any corporate fund from which a judgment can be satisfied, but each member of the community is liable in his person or estate to the execution which may issue against the body; each individual therefore may well be thought to be a party to a suit brought against them by their collective name.* [1] In regard to banks, turnpike and other corporations, the case is different. The execution goes against the corporate property, and the individual members can be affected consequentially, only in proportion to their interest in the corporate property. The same reason therefore does not apply, and the decisions in regard to municipal corporations are not conclusive authorities in regard to corporations of a different character. A want of attention to this distinction may have been the reason why the practice has been as alleged; why the declaration in the book of precedents, and the opinion of Mr. Dane, were such as they are ; and the distinction will justify us in looking to the statute itself for the authority of coroners.
*431 It is not too late to go back to the true construction, and for the practice, if wrong, to be corrected. No decided cases can be disturbed, for it is only at the threshold that a wrong service by a sheriff or a coroner can be taken advantage of against the action ; and in the case before us the decision will only confirm the interest in those who had obtained the priority, and who, but for the supposed error, are entitled to the property in question. No case therefore of a questionable construction of a statute could meet us in a more favorable shape. We are happy however not to stand entirely without support from decided cases, on a point which has been so well contested. Our brethren in Maine have pioneered for us, and given their construction to the same statute which we are now called upon to explain. In the case of Adams v. Wiscasset Bank, 1 Greenl. 360, the writ was served by a deputy sheriff who was a stockholder in the bank, and this was pleaded in abatement on the very ground that he was a party to the suit, but the plea was overruled. The opinion of the Court, as delivered by Chief Justice Mellen, gives a very satisfactory summary of the reasons for the decision. The objection urged here, of the practical construction of the statute by the bar, must have been as strong there as here, and the arguments ab inconvenienti qmte as forcible.
It is true that a sheriff or his deputy, in serving process for or against corporations of which he is a member, has an opportunity to commit frauds in his own favor, which it may be difficult to guard against or detect; but the sheriff is an officer in whom great confidence is necessarily reposed. His temptations are numerous and strong ; the vigilance over him, however, is powerful, supported as it is by the personal interest of all whom he may attempt to defraud. The law itself watches him closely ; the penalty of his bond hangs over his head ; his sureties are his guardians ; his office is at the will of the executive, and his immediate responsibility for all his deputies induces him to keep a strict watch upon them. But if his power in such cases is an evil, it is one which the legislature only can cure.[1] And it is well deserv *432 ing of attention, whether a slight pecuniary interest is a greater cause for taking from him the power of serving a writ, than his standing in the relation of father or son or expectant heir or devisee would be, and yet neither of these relations pre vents his serving process. In the levying of executions, appointing of appraisers, &c., the danger would be greater, but even there the inconvefliences on the other side would be worth looking at. Suppose that we should decide or the legislature enact, that no sheriff or- deputy should serve a writ for or against a corporation where he is a stockholder ; how is a creditor, who has occasion to serve process upon a corporation, to know whether his writ is to be directed to a coroner or not ? He has not access to the books of the corporation, and if he undertakes to conjecture and mistakes, his writ will abate. It is true the difficulty will not exist where the corporation is plaintiff, for its officers may know from the books whether a sheriff or his deputy is a member or not; hut the legislature have not made the distinction. He is no more a party in this case than in the other, and therefore a writ directed to a coroner would be equally bad.
We therefore, after an anxious investigation of this subject, have come to the conclusion, that the writ was rightly directed and rightly served; so according to the agreement, the delendant must be defaulted.

 It is now enacted by the Revised Statutes, that every coroner, within the county for which he is appointed, shall serve and execute all writs and precepts, and perform all other duties of the sheriff, when the sheriff sha. be a party or interested in the case. Revised Stat c. 14, § 97.

 See Russell v. The Men of Devon, 2 T. R. 667; Adams v. Wiscasset Bank, 1 Greenl. 361; 2 Kent’s Comm. (3d ed.) 274.

 See ante, 410, n. 1.