OPINION OF THE COURT
Millard L. Midonick, J.
Pursuant to the decision of this court set forth on July 23, 1981 (NYU, July 23, 1981, p 6, col 5) a hearing was held on August 13, 14 and 18, 1981.
The issue focused on whether an attorney named as cotrustee under a probated will of a mother of the objecting daughter, was subject to hostility, friction and conflicts of interest which would render him, if appointed, unable to exercise these powers fairly and properly or would interfere with the proper administration of the trust because of his being “an unsuitable person” under SCPA 711. I now find in the negative, and that these allegations are without support of evidence.
The individual attorney is opposed as prospective trustee of trusts for the benefit of the objecting daughter of the decedent, and the son of the decedent, as life beneficiaries *600 of two trusts. The daughter is also contingent beneficiary of the son’s trust, as are her two children after her, contingent beneficiaries of both trusts. The said son of the decedent is an adjudicated incompetent.
The cocommitteemen of the person and property of the incompetent (brother of the objectant), so appointed on petitions of the decedent mother, are the attorney named in this will as cotrustee and a psychologist. The named testamentary cotrustees on the other hand, do not include the psychologist, but instead are Bankers Trust Company (now serving alone pending decision herein) and the attorney now sought to be disqualified as cotrustee.
As explained more fully in the prior decision cited above, SCPA 707 does not provide for hostility and the other allegations herein as a cause for disqualifying in advance and denying letters to a testamentary trustee. Removal is provided for in SCPA 711 if serious mismanagement or misconduct appears, or if the fiduciary is found to be “an unsuitable person”. Despite strenuous presentation by the nominated trustee in controversy that the Court of Appeals doctrine authorizing denying a trustee’s initial letters would only be available in the case of an inter vivos appointment of a trustee, and then only for cause not related to the allegations herein, this court envisaged the possibility of disqualification of a named testamentary trustee even before he had an opportunity to take office. (Matter of Younker, NYLJ, July 23, 1981, p 6, col 5, supra; cf. Matter of Jurzykowski, 36 AD2d 488, affd 30 NY2d 510; Matter of Lipsit, 50 Misc 2d 289.) This procedure was deemed safer to allow the objections of the daughter beneficiary to be heard and aired before difficulties may arise involving a trustee in office. Such a hearing should be entertained only in extreme cases, in order to avoid unnecessary litigation. (See Matter of Foss, 282 App Div 509, 511, 513.)
The evidence heard indicates that the objecting daughter of the decedent was on friendly, indeed cordial, terms with the attorney nominated as trustee by her mother’s will, for literally decades. He was the objectant’s attorney for many years, as well as attorney for the decedent mother of the objectant.
*601 The objectant’s long-time antipathy was directed toward the psychologist who was favored by the decedent mother. He had been appointed by the Supreme Court as committee of the person of the incompetent brother of the objectant, and has served as such since 1963. The brother lived with the decedent mother until her death in 1980. The objectant daughter was displeased about the psychologist as committee and her mother’s favoring of him and payments for his attention to the brother of the objectant, but refrained from challenging her mother for fear of being disinherited and also because of little hope of prevailing in a contest between the mother, in objectant’s role as a sister of the incompetent son.
Upon the mother herself becoming a conservatee and relinquishing her official role as cocommittee of the property of her son with the attorney, the attorney continued as cocommittee of the property of the objectant’s brother, and, while his mother was still alive, moved successfully to substitute the psychologist as cocommittee of the property of the objectant’s brother.
This development literally outraged the objectant to the extent of instituting a proceeding to remove both the psychologist, and the attorney here involved, from their cocommitteeships. That proceeding was instituted in the Supreme Court which had appointed them. Thereafter on motion by the objecting daughter herself to transfer that removal proceeding to be consolidated before me with this pending effort to block the appointment of the named attorney as trustee, that motion was denied by the Supreme Court. One ground of that petition for removal in the Supreme Court is the alleged wrongful action of the cocommittee restricting the sister and her adult two children from sufficient visitation and telephone communication with the incompetent brother. The fault is allegedly primarily that of the psychologist, who is personally close to the incompetent, but the allegation in the Supreme Court (and here) finds fault also with the attorney on the ground that he blindly follows the dictates of the psychologist. The opposite is hereby found insofar as this proceeding involving prospective duties as trustee is concerned. He *602 has agreed and disagreed with the psychologist on his own independent judgment.
As cocommittee of the brother and as attorney for the mother, the named attorney trustee has long since blocked a proposal by the psychologist cocommittee to increase substantially his compensation for professional care of the incompetent brother, and has acted with vigor to preserve the decedent’s estate and the brother’s assets. Further evidence of the attorney’s independence from the psychologist and vigorous protection of his clients abounds in the record.
When a conflict did arise between the decedent and her daughter over these events relative to the psychologist, the attorney felt compelled, and properly, to insist that he cease representing the objectant as her attorney. The resulting displeasure of the daughter is not to be laid at the door of the attorney, as she does.
Since the wisdom and desirability of additional visitation and communication is before the Supreme Court, where recourse to psychiatric evidence may be ordered, psychiatric examination would seem inappropriate here where only the prospect of trusteeship is involved, quite apart from the function of committee of the person. The motion of the objectant for psychiatric evidence to be ordered by this court is therefore denied as unnecessary in this proceeding.
This court is compelled to comply with the commands of the testatrix who validly named Bankers Trust Company and the attorney now objected to, by issuing letters of trusteeship to both. The burden upon the objecting daughter beneficiary to disregard this nomination in her mother’s will has not been sustained.
As Judge Pound made clear in respect to nominated executors in Matter of Leland (219 NY 387, 393-394): “In New York the necessary qualifications of an executor are described with minuteness. * * * [T]he testator still enjoys the right to determine who is most suitable * * * and his solemn selection is not lightly to be disregarded. * * * The 'courts will not undertake to make a better will nor name a better executor for the testator. They will not add disqualifications to those specified by the statute, nor disregard *603 testator’s wishes by too liberal an interpretation of the specific disqualifications, nor consider the size and condition of the estate, except as a minor consideration.”
To the same effect as to executors is the holding, that a conflict of interest is not a disqualifying ground, by Judge Breitel who stated concerning this section covering both executors and trustees: “It has been uniformly held heretofore that the grounds for disqualification set forth in section 94 [SCPA 707] are exclusive, and that the Surrogate’s power to refuse letters is limited by that statute (Matter of Flood, 236 N. Y. 408; Matter of Leland, 219 N. Y. 387; Matter of Latham, 145 App. Div. 849). The texts agree. Tf the candidate cannot be slotted in any subdivision listing a disqualifying cause he may act’ (2 Jessup-Redfield on Surrogate’s Law and Practice [1947], § 1284. Accord, 2 Butler on New York Surrogate Law and Practice [1941], § 1161; 2 Warren’s Heaton on Surrogates’ Courts [1952], § 128, par. 1, subd. [a]).” (Matter of Foss, 282 App Div 509, 511; accord Matter of Miller, 48 Misc 2d 815, 817.)
Since these pronouncements, the Court of Appeals has modified their apparent reliance upon SCPA 707 alone. Incorporated in consideration of disqualification of a named trustee even before he is appointed is the concept of his being “an unsuitable person” subject to removal after serving as provided by SCPA 711. It has been so held in Matter of Jurzykowski (36 AD2d 488, affd 30 NY2d 510, supra). True, that holding involved a trustee named in an inter vivos trust, but there is no good reason for a different rule in the matter of a nominated testamentary trustee. It would be vain to appoint this named attorney if he is so hostile as to be an “unsuitable person” and subject to removal upon or soon after appointment. There is no authority for distinguishing between an inter vivos trust and a testamentary trust in this respect. (Cf. Matter of Jurzykowski, 36 AD2d 488, affd 30 NY2d 510, supra; Matter of Lipsit, 50 Misc 2d 289, supra; Matter of Younker, NYLJ, July 23, 1981, p 6, col 5, supra.)
The objectant does not allege dishonesty, and if the burden of her proof may be construed to amount to claimed improvidence, no such evidence has been heard; the facts are otherwise. Her overreaction of displeasure in regard to *604 his careful attention to his duties as attorney and cocommittee cannot serve as a ground for disqualification to block his appointment as testamentary cotrustee in both the sister’s and the brother’s trusts, either under SCPA 707 or 711. “It can hardly be a ground of disqualification of [testator’s] personal representative that he takes the same position as the decedent.” (Matter of Miller, 48 Misc 2d 815, 819-820, supra.) Here, as in Miller, “her allegations make it plain that in her status as trust beneficiary she regards the fiduciary as her representative rather than the representative of the decedent”. (Matter of Miller, supra, at p 816.) “Misconduct, not conflict in interest, merits removal [or disqualification] of a fiduciary”. (See Matter of Foss, 282 App Div 509, 513, supra; Matter of Miller, supra, at p 818.)
The issue of visitation is not proved to affect the trusteeship since that financial function is found not to envisage any plan to move the ward from his lifelong attachment to his New York County residence where he will be accessible to his family to the extent the Supreme Court finds appropriate.
This court expressly finds that the nominated attorney is in fact not hostile or unfair in any way toward the sister objectant nor toward her two adult children. Despite her displeasure, if the attorney will qualify to serve as cotrustee, it is found that his attitude will be fair and dispassionate in respect to both the sister’s and the brother’s trusts, in respect to investments, invasions, allocations and care. The sister’s fear expressed as a witness is that not enough money has been properly spent for her brother’s care and that some or all of the moneys for the psychologist’s functions were misspent over the years, but these contentions are unsupported by the evidence.
Submit order accordingly, designating and appointing the nominated attorney as testamentary cotrustee, to serve in conjunction with Bankers Trust Company, if the attorney will qualify as such.